AO 93 (Rev. 11/13) Search and Seizure Warrant

## UNITED STATES DISTRICT COURT

### FILED

for the

Eastern District of California

JUN 1 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

In the Matter of the Search of )
)
INFORMATION ASSOCIATED WITH ACCOUNTS )
RELATED TO KJMARTIN6485@GMAIL.COM AND ) Case No. 2 1 7 - SW - 0 2 5 2   EFB
KEVINMARTIND33G, AND 11 LINKS THAT ARE STORED )
AT PREMISES CONTROLLED BY DROPBOX )
)

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ April 18, 2017 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 4-4-2017 2:50 p.m. _____
Judge's signature

City and state:     Sacramento, California _____ Edmund F. Brennan, U.S. Magistrate Judge
Printed name and title

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                                      Date

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is all information associated with the Dropbox Inc. account that was created, utilized, maintained and/or connected with or accessed by:

(1) The email address kjmartin6485@gmail.com;

(2) The username "kevinmartind33g"; and

The following Dropbox Links:

1. https://www.dropbox.com/sc/██████████████████JVKDYc4fa

2. https://www.dropbox.com/sc/██████████████████2o3yNMg8ta

3. https://www.dropbox.com/sc/██████████████████uy6YbzR24a

4. https://www.dropbox.com/sc/x████████████████_WTcVa

5. https://www.dropbox.com/sc/n████████████████ybsclJz5a

6. https://www.dropbox.com/sh/██████████████_BgLBltapRa?dl=0

7. https://www.dropbox.com/sc/██████████████████q2na

8. https://www.dropbox.com/sh/██████████████████Na?dl=0

9. https://www.dropbox.com/sh/zo██████████████_DTjZrJa?dl=0

10. https://www.dropbox.com/sh/██████████████████TQia/Camer a%20Uploads?dl=0

11. https://dropbox.com/sh/██████████████████_DTjZrJa?dl=0

Each of which is stored at premises owned, maintained, controlled, or operated by Dropbox, Inc., headquartered at 333 Brannan Street, San Francisco, California 94107.

## ATTACHMENT B

### Items to be seized

**I.     INFORMATION TO BE DISCLOSED BY DROPBOX, INC.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Dropbox, Inc. including any messages, records, files, logs, or information that have been deleted but are still available to Dropbox or have been preserved pursuant to requests made under 18 U.S.C. § 2703(f), Dropbox Inc. is required to disclose the following information to the government for each account, identifier, or link listed in Attachment A:

a.     All records or other information regarding the identification of the account(s), to include full name, physical address, telephone numbers and other identifiers, email addresses, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

b.     All information automatically recorded by Dropbox from a user's Device, including its software and all activity using the Services, to include, but not limited to:  a utilizing device's IP address, browser type, web page visited immediately prior to connecting to the Dropbox website, all information searched for on the Dropbox website, locale preferences, identification numbers associated with connecting devices, information regarding a user's mobile carrier, and configuration information.

c.     The types of service utilized by the user(s).

d.      All records or other information stored by an individual using the account(s) and links, including stored or preserved copies of: all files uploaded, downloaded or accessed using the Dropbox service, including all available metadata concerning these files, as well as, email "invites sent or received via Dropbox, contact lists, and the creation of "shared links."

e.      All records pertaining to communications between Dropbox and any person regarding the account(s), including contacts with support services and records of actions taken.

f.      All records of communications or messaging between the user(s) of the account(s) and links and other Dropbox users.

g.      For each folder within the account(s) and each link, all unredacted records including the unique user ids of each individual who created, joined or utilized the folder, by either adding, deleting, or accessing content from the folder.

h.      For each folder within the account(s) and each link, information about who accessed the files via a shared link, including IP address and records containing information about the device from which the link was accessed.

i.      Records of session times and durations and IP addresses associated with each of these sessions for every user in each folder in this account and each link.

j.      Telephone or instrument numbers provided to Dropbox when each of these users created their accounts, and records of all devices connected to the Dropbox account for each of the individuals accessing the folders in the account(s) and links.

k.      A complete list of all users within each folder found in the account(s) and links, including every user name, user identification number, corresponding email address, physical address, and date the user joined Dropbox.

l.      Records of session times and durations and IP addresses associated with each of these sessions for every user in each folder in the account(s) and each link.

m.      For each folder found in the account(s) and links, all information regarding the user who created the folder, the creation date, and a complete listing of all users who joined, accessed, and left the folder, including the dates each joined, accessed or left the folder.  All information regarding when, if applicable, each folder was deleted and who deleted it.

n.      For the individuals identified as users of the folders in the account(s) or links, any means or sources of payment for this service, including credit card and bank account numbers.

## II.    INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2252, and 2252A, including for each account, identifier, or link listed on Attachment A, information pertaining to the following matters:

(a) Evidence of possession, receipt, distribution of child pornography, including, but not limited to, all images depicting child erotica, child pornography, or the sexual exploitation of minors.

(b) All images, messages and communications, including any and all preparatory steps taken in furtherance of these crimes.

(c) Evidence indicating how and when the account(s) and links were accessed or used, and by whom, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation.

(d) Evidence indicating the user(s) state of mind as it relates to the crimes under investigation.

(e) All images, messages and communications regarding deletion of images, wiping

software, encryption or other methods to avoid detection by law enforcement.

(f) The identity of the person(s) who created or used the account(s) and links, including

records and images to help reveal the whereabouts of such person(s).

## III.    PROVIDER PROCEDURES

Dropbox shall deliver the information described in Section I of Attachment B within 10

days of the service of this warrant.  Dropbox shall send such information, on any digital media

device, to:

> Special Agent Laura Mruk
> 2001 Freedom Way
> Roseville, California 95678

Case 2:17-sw-00252-EFB   Document 5   Filed 06/01/17   Page 8 of 40

**ORIGINAL**
**FILED**

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

APR 0 4 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| INFORMATION ASSOCIATED WITH ACCOUNTS RELATED TO ) | Case No. |
| KJMARTIN6485@GMAIL.COM AND  KEVINMARTIND33G, AND ) | |
| 11 LINKS THAT ARE STORED AT PREMISES CONTROLLED BY ) | 2:17-SW-0252 EFB |
| DROPBOX ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

### SEE ATTACHMENT A, attached hereto and incorporated by reference.

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B, attached hereto and incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§2252 & 2252A | Possession, Receipt, and Distribution of Child Pornography |

The application is based on these facts:

### SEE AFFIDAVIT, attached hereto and incorporated by reference.

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

LAURA MRUK, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-4-2017

_____
*Judge's signature*

City and state:  Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Laura D. Mruk, being duly sworn, depose and state the following:

### EXPERIENCE AND TRAINING

1.      I am a Special Agent with the FBI, and have been since May 1, 2016.  I am

currently assigned to the Sacramento Division of the FBI, Violent Crime Squad, where I

investigate various federal crimes including federal computer crimes.  As part of my daily duties,

I investigate criminal violations relating to child exploitation and child pornography, including

violations pertaining to the illegal distribution, receipt, and possession of child pornography, in

violation of 18 U.S.C. §§ 2252, and 2252A.  I have observed and reviewed numerous examples of

child pornography and visual depictions of minors engaged in sexually explicit conduct (as

defined in 18 U.S.C. § 2256) in all forms of media, including computer media.  Throughout the

course of my training and experience as a Special Agent, I have learned that individuals utilize

online storage accounts like Dropbox to store and distribute child pornography.  Moreover, I am a

federal law enforcement officer who is engaged in enforcing the criminal laws, including 18

U.S.C. §§ 2252, and 2252A and I am authorized by the Attorney General to request a search

warrant.

2.      I make this affidavit in support of an application for a search warrant for all

information associated with the following: (1) a certain Dropbox account that was created,

utilized, maintained and/or connected with the email address kjmartin6485@gmail.com and/or

the username "kevinmartind33g," and (2) all information associated with specific Dropbox links,

both of which are described in the following paragraphs and in Attachment A, incorporated herein

by reference.  The information to be searched is stored at premises which are owned, maintained,

controlled, or operated by Dropbox, Inc., with a business office at 333 Brannan Street, San

Francisco, CA 94107.

3.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require Dropbox, Inc. to disclose to the United States copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

4.      The facts and conclusions in this Affidavit are based on: (i) my personal knowledge gathered during my participation in this investigation; (ii) my training and experience; (iii) the training and experience of other law enforcement personnel with whom I have discussed this investigation; and (iv) a review of information obtained by other law enforcement personnel participating in this investigation.

5.      This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## CRIMINAL VIOLATIONS

6.      The FBI is currently investigating the possession, receipt, and distribution of child pornography through the Internet, and specifically Dropbox Inc.  Based on my training and experience and the facts set forth in this Affidavit, there is probable cause to believe that violations of (i) Title 18, United States Code, Sections 2252(a)(2) and 2252A(a)(1)&(2) (Distribution of Child Pornography); (ii) Title 18, United States Code, Section 2252(a)(4)(B) (Possession of Child Pornography); and (iii) Title 18, United States Code, Sections 2252(a)(2) (Receipt of Child Pornography and Attempted Receipt of Child Pornography) have been committed.  There is also probable cause to search the information described in Attachment A for

evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND

A.      DROPBOX

8.      "Dropbox" is a file hosting service that offers cloud storage and file synchronization that allows users to access and share files on computers, phones, tablets, and the Dropbox website.  Dropbox's services are "designed to make it simple for [a user] to store [his or her] Stuff, collaborate with others, and work across multiple devices." https://www.dropbox.com/privacy (last viewed April 3, 2017).

9.      According to Dropbox's privacy policy, at https://www.dropbox.com/privacy, Dropbox stores the user's "Stuff," such as "files, messages, comments, and photos—as well as information related to it," such as the user's name, email address, password, username, profile picture, phone number, payment info, physical address, account activity, and contacts.  *See* https://www.dropbox.com/privacy and https://www.dropbox.com/help/63 (last viewed April 3, 2017).  Dropbox also collects information related to how the user uses Dropbox's services, "including actions [the users take in his or her account] (like sharing, editing, viewing, and moving files or folders). . . . and about the devices [the user] use to access the Services. This includes things like IP address, the type of browser and device [the user] use[s], the web page [the

user] visited before coming to [the Dropbox] site, and identifiers associated with [the user's ] devices." The user's devices may also transmit location information to Dropbox.

      10.    Dropbox allows subscribers to obtain accounts at the domain name www.dropbox.com. Subscribers obtain a Dropbox account by registering with an email address. During the registration process, Dropbox asks subscribers to provide basic personal identifying information. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). To sign into the user's Dropbox account, the user enters their email and password. After accessing the Dropbox website, if an individual correctly inputs the email address and password, he or she would have the ability to access and open the account where various materials are stored.

      11.    When the subscriber transfers a file to a Dropbox account, it is initiated at the user's computer or electronic device, transferred via the Internet to the Dropbox servers, and then can automatically be synchronized and transmitted to other computers or electronic devices that have been registered with that Dropbox account. This includes online storage in Dropbox servers. If the subscriber does not delete the content, the files can remain on Dropbox servers indefinitely. Even if the subscriber deletes their account, it may continue to be available on the Dropbox servers for a certain period of time.

      12.    Once a user has a Dropbox account, they can invite other Dropbox users to access their shared folders. A shared folder is one in which more than one user has access to, and can add, download, or delete content. If a user is invited to join another user's folder, the invitation request is sent to the registered email account.

13.    A Dropbox user can also create a "shared link" to share file content with individuals who do not have a Dropbox account. The Dropbox user sends the shared link, and anyone who clicks on the link can view, comment, or download a copy of the files, however, they cannot edit the original files. *See* https://www.dropbox.com/help/167 (last accessed April 3, 2017).

14.    In some cases, Dropbox account users will communicate directly with Dropbox about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Online storage providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

15.    Based on my training and experience, I know that online storage mediums such as Dropbox make it possible for the user to have access to saved files without the requirement of storing said files on their own computer or other electronic storage device. Dropbox is an "offsite" storage medium for data that can be viewed at any time from any device capable of accessing the internet. Users can store their files on Dropbox and avoid having the files appear on their computer. Anyone searching an individual's computer that utilizes Dropbox would not be able to view these files if the user opted only to store them at an offsite such as Dropbox. This is often viewed as advantageous for collectors of child pornography in that they can enjoy an added level of anonymity and security.

B.    KIK MESSENGER

16.    Many of the Dropbox links identified in this investigation were exchanged via the KIK Messenger. KIK Messenger is an application that is publicly available for download and use on cellular phones and tablet devices running both the Android and iOS operating systems. KIK

Messenger offers a medium for users to send messages to other users of the KIK Messenger application. These messages can contain text, images, videos, and emoticons.

17.    When a user creates a KIK Messenger account, the user must supply an email address. The user then creates a unique username, as well as a display name. The display name is not unique and this is what other users see when searching for users with whom to communicate. If a user clicks or taps on another user's display name, that user's picture and unique username will be displayed.

C.    DEFINITIONS

a.  Statutory Definitions

18.    "Child Pornography" includes the definition found at 18 U.S.C. § 2256(8), and is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

19.    As used in this Affidavit, "child erotica" means materials or items that are sexually arousing to certain individuals but that are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

20.    "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

21.    "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

22.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

### b.  The Internet and Technical Terms Pertaining to Computers

23.    As part of my training and experience, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers[1] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite.  Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state.  Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial

---

[1] The term "computer" is defined by 18 U.S.C. § 1030(e)(1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."

transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet (through a university, an employer, or a commercial service such as an "Electronic Service Provider" or "ESP" [*see* definition of "Electronic Service Provider" below]). Once the individual has accessed the Internet, that individual can use Internet mail services, including sending and receiving e-mail. In addition, the individual can visit web sites (*see* definition of "web sites" below), and make purchases on the web sites.

24.     Set forth below are some definitions of technical terms, used throughout this Affidavit, and in Attachment A hereto, pertaining to the Internet and computers more generally.

> a.  Client/Server Computing: Computers on the Internet are identified by the type of function they perform. A computer that provides resources for other computers on the Internet is known as a server. Servers are known by the types of service they provide; that is, how they are configured. For example, a web server is a machine that is configured to provide web pages to other computers requesting them. A client computer is a computer on the Internet that is configured to request information from a server configured to perform a particular function. For example, if a computer is configured to browse web pages and has web page browsing software installed, it is considered a web client.
>
> b.  Compressed file: A file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.
>
> c.  Digital device: includes any electronic system or device capable of storing and/or processing data in digital form, including: central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices such as telephone paging devices, beepers, and mobile telephones; peripheral input/output devices such as keyboards, printers,

scanners, plotters, monitors, and drives intended for removable media; related communications devices such as modems, cables, and connections; storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes, and memory chips; and security devices.

d. <u>Domain Name</u>: Domain names are common, easy to remember names associated with an Internet Protocol address (defined below). For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32.

e. <u>Hash value</u>: A mathematical algorithm generated against data to produce a numeric value that is representative of that data. A hash value may be run on media to find the precise data from which the value was generated. Hash values cannot be used to find other data.

f. <u>Image or copy</u>: An accurate reproduction of information contained on an original physical item, independent of the electronic storage device. "Imaging" or "copying" maintains contents, but attributes may change during the reproduction.

g. <u>Electronic Service Providers ("ESPs") and the Storage of ESP Records</u>: ESPs, formerly known as ISPs (Internet Service Providers) are commercial organizations that are in business to provide individuals and businesses access to the Internet. ESPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ESPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line ("DSL") or cable television, dedicated circuits, or satellite based subscription. ESPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports. Many ESPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ESP over a telephone line or through a cable

system, and can access the Internet by using his or her account name and personal password. ESPs maintain records ("ESP records") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ESP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ESPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ESPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ESP customer is stored temporarily by an ESP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage." *See* 18 U.S.C. § 2510 (15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long-term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service." *See* 18 U.S.C. § 2711(2).

h.  Internet Protocol Address ("IP address"): Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 254. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ESP a limited block of IP addresses for use by that ESP's customers or subscribers. Most ESP's employ dynamic IP addressing, that is they allocate any unused IP addresses at the time of initiation of an Internet session each

time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ESP to be shared among a group of computers over a period of time. The ESP logs the date, time, and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial up session. Once the session ends, the IP address is available for the next dial up customer. On the other hand, some ESP's, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer.

i.   Log file: Log files are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a Web site was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

j.   Malicious Software ("malware"): Software designed to infiltrate a computer without the owner's informed consent. The expression is a general term used by computer professionals to mean a variety of forms of hostile, intrusive, or annoying software or program code. Software is considered malware based on the perceived intent of the creator rather than any particular features. Malware includes computer viruses, worms, trojan horses, most rootkits, spyware, dishonest adware, crimeware, and other malicious and unwanted software.

k.   Metadata: Data contained in a file that is not usually associated with the content of a file but is often associated with the properties of the application or

device that created that file. For example, a digital camera photograph often has hidden data that contains information identifying the camera that manufactured it and the date the image was taken.

l.  Steganography: Art and science of communicating in a way that hides the existence of the communication. It is used to hide a file inside another. For example, a child pornography image can be hidden inside another graphic image file, audio file, or other file format.

m.  Downloading: Downloading is the transmission of a file from one computer system to another. From the Internet user's point-of-view, to download a file is to request it from another computer (or from a Web page on another computer) and to receive it.

n.  Uploading: Uploading is the transmission in the other direction: from one computer to another computer. From an Internet user's point-of-view, uploading is sending a file to a computer that is set up to receive it.

o.  Trace Route: A trace route is an Internet debugging tool used to document the list of inter-connected computers between two computers on the Internet. A trace route will list the names and IP addresses of computers that provide the physical link between two computers on the Internet. Trace routes are useful tools to help geographically identify where a computer on the Internet is physically located, and usually includes information about the registered owner of computers on the Internet.

p.  Uniform Resource Locator ("URL"): The address of a resource or file located on the Internet, also called a "domain name".

q.  Web Site Hosting: Web site hosting provides the equipment and services required to host and maintain files for one or more web sites and to provide rapid Internet connections to those web sites. Most hosting is "shared," which means that multiple web sites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a Web site, the client needs a server and perhaps a web hosting company to host it. "Dedicated hosting" means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of

a Web site. "Co-location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support. Co-location facilities offer customers a secure place to physically house their hardware and equipment as opposed to keeping it in their offices or warehouses, where the potential for fire, theft, or vandalism is greater.

r.   Cloud services: Services made available to users on demand via the Internet from a cloud computing provider's servers as opposed to being provide from a user's own , personal servers. Users can easily share files through cloud accounts with others by simply sending others an online link to the file being shared.

s.   Chat: Chat refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

D.      COMPUTERS AND CHILD PORNOGRAPHY

25.     Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their

exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based web sites to conduct business, allowing them to remain relatively anonymous.

26.     In addition, based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children. Computers serve four basic functions in connection with child pornography: production, communication and distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

> a.   Production: Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

b. <u>Communication and Distribution</u>: The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. In addition, the Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache[2] to look for "footprints" of the web sites and images accessed by the recipient.

c. <u>Storage</u>: The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 1 terrabyte are not uncommon. These drives can store hundreds of thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is

---

[2] "Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a web site accessed by the user in order to allow the user speedier access to and interaction with that web site.

done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

## FACTS ESTABLISHING PROBABLE CAUSE

27.     In June 2016, FBI Dallas assisted the Collin County Sheriff's Office (CCSO) with the investigation and federal prosecution of PERSON 1 for Coercion and Enticement of a Minor, Distribution of Child Pornography, and Possession of Child Pornography.

28.     In the course of this investigation, FBI Dallas recovered a 16GB Samsung Galaxy III cellular telephone.  Pursuant to PERSON 1's consent and a subsequent search warrant issued by Collin County District Court Judge Mark Rusch, PERSON 1's Samsung cellular telephone was forensically processed.  FBI Dallas conducted a full logical extraction, a file system extraction, and physical extraction of the device.

29.     Upon review of the results, FBI Dallas observed KIK messaging communications between PERSON 1 and KIK user "kevinmartind33g" where KIK user "kevinmartind33g" told PERSON 1 that he saw PERSON 1's KIK username on a website beginning with T and ending in X (hereinafter Website TX).  During his interview with investigators, PERSON 1 stated that he used the human sexuality forum on the Website TX to find others who wanted to trade child pornography.

### A.     Conversations Between "kevinmartind33g" and Person 1

30.     Upon initial contact, KIK user "kevinmartind33g" asked PERSON 1 what he was into and said he may have some videos to trade.  KIK user "kevinmartind33g" followed this message with a second message that contained a Dropbox link and the words "2 vids."  PERSON

1 replied, "girls, teens/younger HC"[3] to which KIK user "kevinmartind33g" replied, "cool are you able to play the vids I sent?"

  31. As they continued their conversation, PERSON 1 and KIK user "kevinmartind33g" exchanged multiple Dropbox links that contained image and video files. The following Dropbox links, which are set forth in their entirety in Attachment A, were sent by "kevinmartind33g" to PERSON 1 on June 10, 2016:

  (a) Link ending in "████████████████JVKDYc4fa";

  (b) Link ending in "█████████████yNMg8ta";

  (c) Link ending in "_ZXuy6YbzR24a";

  (d) Link ending in "_WTcVa"; and

  (e) Link ending in "██████████bsclJz5a"

PERSON 1 sent "kevinmartind33g" the following Dropbox links, which are set forth in their entirety in Attachment A, on June 10, 2016:

  (a) Link ending in "DTjZrJa?dl=0";

  (b) Link ending in "_DTjZrJa?dl=0"; and

  (c) Link ending in "Camera%20Uploads?dl=0"

The links were not accessible to law enforcement at the time the forensics were conducted so investigators were unable to review the files shared between the users to determine whether they depicted child pornography. This warrant seeks all information maintained by Dropbox pertaining to these links, including the actual files depicted when a user navigated to the link addresses.

---

[3] Based on my experience and conversations with other federal agents, I know the abbreviation "HC" stands for "hard core" in the vernacular common to pornography.

32.     Also during their conversation, KIK user "kevinmartind33g" asked PERSON 1 what was the age of the youngest person PERSON 1 had been with.  PERSON 1 replied he had been with a seventeen year old when he was twenty-seven but that he wanted to find a nice fourteen or fifteen year old to play with.  KIK user "kevinmartind33g" told PERSON 1 he engaged in sexual activity with his former roommate's 11-year-old daughter when he was thirty years old.  Specifically, KIK user "kevinmartind33g" stated, "Her parents were separate and her dad was fucking her.  Her mom was in denial about it.  It was great she was into it and was still tight I didn't last too long."  PERSON 1 replied, "I wish there was a way to hook up with other pedos and share your girls lol."  KIK user "kevinmartind33g" continued and stated that he has a family friend with two girls and that he might try to play around with one in a few years.

33.     Further, KIK user "kevinmartind33g" told PERSON 1 that he was communicating online and trying to set up meetings with women who have daughters but he has yet to be successful to set up the meet.  PERSON 1 then asked KIK user "kevinmartind33g" if he was in the United States because PERSON 1 wanted to meet up with him in a few years when the girls were ready.  KIK user "kevinmartind33g" replied he was in the United States but that PERSON 1 had to bring a young girl also when they met.

34.     Lastly, KIK User "kevinmartind33g" offered PERSON 1 advice on how to get children to join into sexual activity with PERSON 1 and a partner should PERSON 1 become involved with a woman who had children.

35.     On or about July 13, 2016, PERSON 1 was indicted by a federal grand jury in a five-count indictment charging him with Attempted Coercion and Enticement of a Minor, Distribution of Child Pornography, and Possession of Child Pornography.

36.     On or about July 19, 2016, FBI Dallas submitted a preservation request to KIK Interactive, Inc., for the preservation of the account of "kevinmartind33g." An administrative subpoena was then submitted to KIK for subscriber information related to the "kevinmartind33g." account. KIK Interactive responded to the request and indicated that the account holder's e-mail address was kjmartin6485@gmail.com, and that the account had been established on or about September 16, 2015.

37.     FBI Dallas followed up by issuing an administrative subpoena to Google, Inc., for subscriber records associated with the above listed email account. Google, Inc., replied on August 5, 2016, and provided the following information for the account registrant:

Subscriber Name: Kevin Martin

Email Address: kjmartin6485@gmail.com

Created On: 09/11/2015

SMS: 916-XXX-9157[4]

38.     Based upon this information, FBI Dallas submitted an administrative subpoena to Verizon Wireless for subscriber information related to the above listed telephone number. Results were received from Verizon on September 19, 2016. Below is the information associated with the telephone account 916-XXX-9157:

Subscriber Name: Kevin Martin

Address: ▓▓▓▓▓▓▓▓▓▓, Sacramento, CA 95835

Registration Date: 4/30/2015

Disconnect Date: 4/22/2016

---

[4] Verizon provided the entire phone number, but to reduce the number of redactions of personal identifiable information that may need to be made at a later time, it is provided in part here.

Telephone No.: 916-XXX-9157

Account number: ▓▓▓▓3-1

On April 22, 2106, the disconnect date, the subscriber information changed to:

Subscriber Name: KP Transport Inc.

Address: ▓▓▓▓▓▓▓▓, Sacramento, CA 95835

Registration Date: 4/22/2016

Telephone No: 916-XXX-▓▓▓, 916-XXX-9157

Account number: ▓▓▓▓2-1

39.    On September 26, 2016, after receiving the above subscriber information, FBI

Dallas forwarded the subscriber information and other investigative documents to FBI

Sacramento to conduct an investigation of the user of the KIK messaging account

"kevinmartind33g" with associated e-mail account of kjmartin6485@gmail.com, which was

believed to be Kevin Martin of▓▓▓▓▓▓▓ Sacramento, CA 95835.  A public records

check shows that an individual by the name of Kevin Martin is associated with the address▓▓▓

▓▓▓▓▓Sacramento, CA 95835.

**B.    Kik User Kevinmartind33g's Conversations with Person 2**

40.    Based on additional information from FBI Dallas, "kevinmartind33g" had

additional KIK conversations with PERSON 2 in at least June and July of 2016.  During their

conversations, "kevinmartind33g" told PERSON 2 that he is "looking for some one [sic] to get

together with and have kids.  Then when they are old enough we could have fun with them."

Later in the conversation, "kevinmartind33g" asked Person 2 if he or she had children.  PERSON

2 responded, "No.  Want to."  "Kevinmartind33g" replied "Cool would you want to bring them

into the bed when they are old enough?"  Person 2 responded, "All the way from birth."

41.     "Kevinmartind33g" also asked Person 2 "Besides incest what else are you into"?

PERSON 2 responded "crossdressing lil ones." "Kevinmartind33g" inquired if PERSON 2 had

seen bestiality videos and Person 2 said that he or she had but was not into animals.

42.     Later in the conversation, "Kevinmartind33g" revealed that he is an over the road

truck driver and asked PERSON 2 "if we get together and have a kid would you like to go on the

road once in a while.[5]   The 2 of you can take turns on me when I'm driving." From Affiant's

training and experience, "taking turns on me when I'm driving" is slang for oral copulation.

43.     On June 18, 2016 at 3:12:48 PM (UTC) "kevinmartind33g" sent PERSON 2 the

Dropbox link, which is fully set forth in Attachment A, ending in "tapRa?dl=0." On June 19,

2016 at 1:01:44AM (UTC), "kevinmartind33g" asked PERSON 2, "Were you able to play the

vids I sent"? PERSON 2 responded "Maybe later." "Kevinmartind33g" stated "I can sent you 1

on kik if you want." PERSON 2 said "Ok. That's Kool."

44.     On July 4, 2016, "Kevinmartind33g" sent PERSON 2 another Dropbox link,

ending in "TWq2na," with the words "8 videos."

### C.    Kik User Kevinmartind33g's Conversations with FBI Sacramento Undercover Employee

45.     Using the KIK messaging account username of "kevinmartind33g" identified by

FBI Dallas, an FBI Sacramento undercover employee (UCE) contacted "kevinmartind33g" on

KIK on March 9, 2017. Almost immediately, "kevinmartind33g" asked the UCE what the UCE

was "into" and told the UCE that "kevinmartind33g" was "into younger stuff."

"Kevinmartind33g" then sent the UCE a photo of what appeared to be a pre-pubescent girl,

appearing to be approximately six or seven years old, pulling down pink pants and underwear

---

[5] Because Kik User "Kevinmartind33g" is believed to be a cross-country truck driver, "Kevinmartind33g" may have been outside of the Eastern District of California when the conversations set forth in this affidavit occurred.

exposing her vagina. The girl's face was not visible, and the genital area was the focal point of the photo.

46.     "Kevinmartind33g" then immediately asked the UCE if the UCE had Dropbox and said that "kevinmartind33g" kept all of his videos on Dropbox. "Kevinmartind33g" then sent the UCE a Dropbox link ending in "███████████BNa?dl=0," which is fully set forth in Attachment A.

47.     When the UCE accessed the Dropbox link it contained over 80 files of videos and photos depicting child pornography and erotica. The following are a sample of the video files containing child pornography that were viewed from the Dropbox link:

  a.  a12fda2c-cff: This is a video depicting a nude minor female who appears to be
      approximately four to six years old. The minor is sitting on what appears to be a
      bed with her legs spread. An adult male penetrates the minor's vagina with his
      penis. At one point in the video the minor makes some noises that may be words,
      but are indecipherable. The adult male responds, "You don't like it?" The girl
      makes some more noises and the adult male continues to penetrate the minor's
      vagina with his penis for a few more seconds before the video cuts out.

  b.  dc2d7eb6-b2: This is a video depicting a minor female who appears to be
      approximately four to seven years old sitting upright, with her legs spread. The
      words "Fuck Me" with an arrow pointing down to the girl's vagina are written on
      the girl's stomach. An adult male penis penetrates the minor's vagina. Neither the
      male's face nor the minor's face are visible during the video, but the female's
      genitals and the size of her legs and hips reveal that she is a minor.

c.   b579e6a9-ec:  This is a video that depicts a minor female who appears to be
approximately three to five years old.  The minor is fully clothed sitting on a bed
looking towards the camera, and licking an adult male's fully erect penis as he
kneels on the bed in front of the minor.  The adult male's face is not visible.

48.      Later in the conversation, "kevinmartind33g" asked the UCE if the UCE had
children.  The UCE reported that the UCE had an 11-year-old daughter.  "Kevinmartind33g"
shared that he had a stepdaughter who is now 20 years old, but lamented that he never "got to do
any thang with her because she is way too close to her mom."  "Kevinmartind33g" also shared
that before he got married he "got to play around with [his] roommates [sic] daughter" who was
about 11 years old at the time.

49.      "Kevinmartind33g" then had the following chat with the UCE:

kevinmartind33g:  What have you done with her [the UCE's daughter]?

UCE:  ya.  she fingers herself and she sucks ok.

kevinmartind33g:  Nice it takes a bit for her to get stretch [sic] out so that she can take it.
The girl I had was getting it from a baby.  They [his previous roommate and the father of
the 11 year old girl, and the girl's mother] weren't together very long so he got to do what
ever he wanted so she grew up into it.

UCE:  ya.  i havent done that yet, but it could happen.

kevinmartind33g:  Has she [UCE's daughter] have [sic] an organism [sic] yet

UCE:  ya.  i think that's why she likes it. lol.

kevinmartind33g:  Cool you should show her some of the vids that might want her to have
full sex sooner.

UCE:  oh i have.  i think she would but im kinda big n i dont want to hurt her.  lol.

kevinmartind33g:  Yah you kind of have to get her stretch out a bit.  Does she have a
different size dildos that she can use.

UCE:  no.  i havent done dildos.

kevinmartind33g:  That might be your next move.  You could get small anal ones that she can use.

UCE:  ya.  good idea.

kevinmartind33g:  Does she put her finger in or just rub her pussy.

UCE:  both.  i love to watch.

kevinmartind33g:  Cool then it should be easier if you haven't already you should start to finger her and tell her if she wants to take you then she need to start to use 2 fingers.

UCE:  ya.  i've used my fingers.  trying to stretch it.  dildos might b the way.

kevinmartind33g:  ya.

kevinmartind33g:  When you can send me some pics or vids.  And if your [sic] comfortable send me some of you and your daughter or your daughter.

50.     The UCE agreed but told "kevinmartind33g" that the UCE's thumb drive was not working so the UCE could not send anything at the time.

51.     Based upon Affiant's training and experience, Affiant knows that people involved in the collection and trading of files of Child Pornography will oftentimes share access to their cloud based storage accounts, such as Dropbox.  By sending a Dropbox link, a Dropbox user can make their collection of child pornography readily viewable and accessible to the invitee.

52.     Affiant also knows that people who are involved in the collection, trading and possession of Child Pornography will often share only portions of their online storage and keep other items stored in separate folders within the same account.  These items can potentially be children that the subject has physical access to and thus is memorializing those contacts.  In addition, other files, even if they do not contain child exploitation material, may contain images or videos, which would assist in identifying the owner of the account.

53.     I know from my training and experience that the complete contents of Dropbox accounts may be important to establishing the actual user or users who have dominion and control of shared folders within an account at a given time. Dropbox accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider. They may also be used by multiple people. Given the ease with which these accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a subject account. Only by piecing together information contained in the contents of an account may an investigator establish who was the actual user of an account. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search for information showing the actual user of the account would, in some instances, prevent the government from identifying the user of the account and, in other instances, prevent a defendant from suggesting that someone else was responsible. Therefore, the content of a given account often provides important evidence regarding the actual user's dominion and control of the account. For the purpose of searching for Dropbox content demonstrating the actual user of the account, I am requesting a warrant requiring Dropbox to turn over all of the contents of the account without a date restriction for review by government-authorized persons. Furthermore, the government must be allowed to determine whether other individuals had access to the account. If the government were constrained to review only a small subsection of the Dropbox account, that small subsection might give the misleading impression that only a single user had access to the account.

54.     Moreover, people who are involved in the collection, trading and possession of Child Pornography often will have been conducting this type of activity for an unknown period of

time. Without having access to all of the information that is stored within the user's Dropbox account, from the date that the account was opened to the date of the warrant being executed, information that may lead to identification of victims of Child Sexual Exploitation may be missed as well as evidence showing the time period and duration of the criminal activity.

55.    Since Affiant does not know the actual date when the account was created, Affiant is requesting information from the account creation date to the date that the warrant is executed.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

56.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Dropbox to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Dropbox shall deliver the information described in Section I of Attachment B within 10 days of the service of this warrant. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

57.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## CONCLUSION

58.    Based on the foregoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Dropbox Inc. who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

59.     I further request that the Court order that all papers in support of this

application, including the affidavit and search warrant, be sealed until further order of the

Court. These documents discuss an ongoing criminal investigation that is neither public nor

known to all of the targets of the investigation. Accordingly, there is good cause to seal these

documents because their premature disclosure may seriously jeopardize that investigation.

Laura D. Mruk
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before
me on:  4 - 4 - 2017

The Honorable Edmund F. Brennan
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA SHELLEY D. WEGER

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is all information associated with the Dropbox Inc. account that was created, utilized, maintained and/or connected with or accessed by:

(1) The email address kjmartin6485@gmail.com;

(2) The username "kevinmartind33g"; and

The following Dropbox Links:

1. https://www.dropbox.com/sc/█████████████████████ZRJVKDYc4fa

2. https://www.dropbox.com/sc/█████████████████████t2o3yNMg8ta

3. https://www.dropbox.com/sc/█████████████████████ZXuy6YbzR24a

4. https://www.dropbox.com/sc/███████████████████████_WTcVa

5. https://www.dropbox.com/sc/████████████████wybsclJz5a

6. https://www.dropbox.com/sh/██████████████████████_BgLBltapRa?dl=0

7. https://www.dropbox.com/sc/████████████████████Eih7TaTWq2na

8. https://www.dropbox.com/sh/████████████████████x8JA30IijBNa?dl=0

9. https://www.dropbox.com/sh/:███████████████████████[DTjZrJa?dl=0

10. https://www.dropbox.com/sh/███████████████████████████/Camer a%20Uploads?dl=0

11. https://dropbox.com/sh/████████████████████_DTjZrJa?dl=0

Each of which is stored at premises owned, maintained, controlled, or operated by Dropbox, Inc., headquartered at 333 Brannan Street, San Francisco, California 94107.

## ATTACHMENT B

### Items to be seized

## I.   INFORMATION TO BE DISCLOSED BY DROPBOX, INC.

To the extent that the information described in Attachment A is within the possession, custody, or control of Dropbox, Inc. including any messages, records, files, logs, or information that have been deleted but are still available to Dropbox or have been preserved pursuant to requests made under 18 U.S.C. § 2703(f), Dropbox Inc. is required to disclose the following information to the government for each account, identifier, or link listed in Attachment A:

a.   All records or other information regarding the identification of the account(s), to include full name, physical address, telephone numbers and other identifiers, email addresses, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

b.   All information automatically recorded by Dropbox from a user's Device, including its software and all activity using the Services, to include, but not limited to:  a utilizing device's IP address, browser type, web page visited immediately prior to connecting to the Dropbox website, all information searched for on the Dropbox website, locale preferences, identification numbers associated with connecting devices, information regarding a user's mobile carrier, and configuration information.

c.   The types of service utilized by the user(s).

d.     All records or other information stored by an individual using the account(s) and links, including stored or preserved copies of: all files uploaded, downloaded or accessed using the Dropbox service, including all available metadata concerning these files, as well as, email "invites sent or received via Dropbox, contact lists, and the creation of "shared links."

e.     All records pertaining to communications between Dropbox and any person regarding the account(s), including contacts with support services and records of actions taken.

f.     All records of communications or messaging between the user(s) of the account(s) and links and other Dropbox users.

g.     For each folder within the account(s) and each link, all unredacted records including the unique user ids of each individual who created, joined or utilized the folder, by either adding, deleting, or accessing content from the folder.

h.     For each folder within the account(s) and each link, information about who accessed the files via a shared link, including IP address and records containing information about the device from which the link was accessed.

i.     Records of session times and durations and IP addresses associated with each of these sessions for every user in each folder in this account and each link.

j.     Telephone or instrument numbers provided to Dropbox when each of these users created their accounts, and records of all devices connected to the Dropbox account for each of the individuals accessing the folders in the account(s) and links.

k.     A complete list of all users within each folder found in the account(s) and links, including every user name, user identification number, corresponding email address, physical address, and date the user joined Dropbox.

B-2

l.      Records of session times and durations and IP addresses associated with each of these sessions for every user in each folder in the account(s) and each link.

m.      For each folder found in the account(s) and links, all information regarding the user who created the folder, the creation date, and a complete listing of all users who joined, accessed, and left the folder, including the dates each joined, accessed or left the folder. All information regarding when, if applicable, each folder was deleted and who deleted it.

n.      For the individuals identified as users of the folders in the account(s) or links, any means or sources of payment for this service, including credit card and bank account numbers.

## II.     INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2252, and 2252A, including for each account, identifier, or link listed on Attachment A, information pertaining to the following matters:

(a) Evidence of possession, receipt, distribution of child pornography, including, but not limited to, all images depicting child erotica, child pornography, or the sexual exploitation of minors.

(b) All images, messages and communications, including any and all preparatory steps taken in furtherance of these crimes.

(c) Evidence indicating how and when the account(s) and links were accessed or used, and by whom, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation.

(d) Evidence indicating the user(s) state of mind as it relates to the crimes under investigation.

B-3

(e) All images, messages and communications regarding deletion of images, wiping software, encryption or other methods to avoid detection by law enforcement.

(f) The identity of the person(s) who created or used the account(s) and links, including records and images to help reveal the whereabouts of such person(s).

## III.    PROVIDER PROCEDURES

Dropbox shall deliver the information described in Section I of Attachment B within 10 days of the service of this warrant.  Dropbox shall send such information, on any digital media device, to:

    Special Agent Laura Mruk
    2001 Freedom Way
    Roseville, California 95678